BARTH *against* The state of CONNECTICUT:

IN ERROR.

Where an information for a violation of the 2nd section of the statute of 1846, regulating the sale of wines and spiritous liquors, alleged, that at &c., on &c., the accused, not being a taverner, kept a certain store or shop, situate &c., for the purpose of selling wine or spiritous liquors, to be drank thereat; it was held, that such information was not insufficient for want of certainty, either in the description of the place alleged to have been kept by him, or in the description of the liquors for the purpose of selling which it was kept.

The words *store* and *shop*, as used in this statute, and also in the information, which follows the statute, are terms of equivalent import; and therefore, the allegation as to the place kept, though in the alternative form, is substantially an allegation, not that the accused kept one or another of two different places, but that he kept one place, called a *store* or *shop*.

In this case, the offence consists in keeping a place, for a certain purpose; and though the purpose is an essential ingredient of the offence, and cannot be omitted, yet if the one alleged be within the statute, and alleged in the words of the statute, it is sufficient.

Where the court, in a prosecution for a violation of such statute, after a verdict of *guilty* against the accused, rendered judgment, that he " pay a fine of thirty dollars, which is to be paid to the treasury of *New-Haven* county ;" it was held, that although the fine was payable into the town, and not into the county treasury, yet as the town was entitled to it by virtue of the statute, and not by the judgment of the court, and as the court had properly no controul over the disposition of it, and the judgment was complete without any direction on the subject, the direction given was not a sufficient ground of reversing the judgment.

THIS was an information against *Charles Barth*, preferred originally by a grand-juror of the town of *New-Haven,* to a justice of the peace.

The information alleged, That at *New-Haven*, on the 1st day of *September* 1846, and on divers other days and times between that day and the date of the information, *Charles Barth* of said town of *New-Haven,* not being a taverner, with force and arms, did keep a certain store or shop, situate in *Church* street in said town, for the purpose of selling wine or spiritous liquors, to be drank thereat, against the peace, of evil example and contrary to the statute in such case made and provided. (*a*)

(*a*) By the 2nd section of the act, entitled " An Act to regulate the sale of wines and spiritous liquors," passed in 1846, it is enacted, That if any person or persons, except taverners, by an agent or otherwise, shall keep any house, store,

A trial was had before the justice, and *Barth* was thereupon found *guilty*. From this decision he appealed to the county court of *New-Haven* county, was again tried before that court, and was again found *guilty;* whereupon the court passed the following sentence : " That said *Charles Barth* pay a fine of thirty dollars, which is to be paid to the treasury of *New-Haven* county, and pay the costs of this prosecution, taxed, &c., and stand committed until judgment is complied with." On this judgment *Barth* brought a writ of error in the superior court; which was reserved for the advice of this court upon the questions of law involved therein.

*Stoddard* and *Ives*, for the plaintiff in error, contended, 1. That the information was insufficient, because it charged *Barth* with " keeping a *store* or *shop*." This is not sufficiently certain. In the first place, the allegation is a *material* one. The offence is one created by statute. The statute prohibits the keeping of something. What that something is, relates to an essential ingredient of the offence.

Secondly, the word *store* is not, and was not used by the legislature as being, synonymous with *shop*. Though both may occasionally be used to describe the same thing, they are not convertible terms. There are many *shops*, that could, with no propriety, be called *stores*; and *vice versa*. The language of the act is, " house, store, shop or other place." From this enumeration, followed, as it is, by a general clause, it is apparent that the legislature intended to use not synonymous terms, but terms of varying import. *Rex* v. *Coke*, 2 *East's P. C.* 617. *Leach* 123. *Rex* v. *Douglass*, 1 *Campb.* 212. *Archb. C. P. & E.* 48. *Chitty*, in 1 *Crim. L.* 174, says, " the statement of an entry into a house, describing it as a messuage or dwelling-house, is good ; because their signification is similar; but messuage or tenement would be bad,

shop or other place, for the purpose of selling any wine or spiritous liquor, to be drank thereat ;—every such person, so offending, shall, on conviction thereof, forfeit and pay, for every such offence, a fine of thirty dollars; one half of which shall be to the informer, for his own use, and the other half to the treasury of the town wherein the offence is committed, for the use of such town." By the 4th section of the same act, it is provided, " that in all cases of conviction, on the information or presentment of a constable or grand-juror, the whole of the fine or penalty shall be to the treasury of the town wherein such offence is committed, for the use of said town."

*New-Haven,*
June, 1847.

Bath
*v.*
The State.

because the import of the latter word is uncertain. If the connecting of these terms together in the alternative, is bad, then the insertion of "shop or store" is also bad; for their signification is at least equally dissimilar.

Thirdly, the description of the place is not in the words of the statute; and therefore, if defective, a verdict would not aid it, even under the statute of 7 *Geo.* 4. *Archbold (p.* 478.) cites a number of cases where indictments were held bad, on account of very slight deviations from the language of the act. The *United States* v. *Gooding*, 12 *Wheat.* 460.

Fourthly, disjunctive pleading vitiates, even in civil cases; (1 *Chitt. Plead.* 236.) and the rules of criminal pleading being more stringent, this objection will apply with greater force. *Rex* v. *Stocker*, 5 *Mod.* 137. S. C. 1 *Salk.* 342. 371. Disjunctive pleading is not only bad where two offences are charged in the alternative, but it has been held bad in mere matters of description. In *Rex* v. *Stocker*, the court say—"In an indictment or information, the fact is never laid in the disjunctive; and therefore, an indictment on the statute 8 *Hen.* 6. *chap.* 9. for a forcible entry into two closes of meadow *or* pasture, was held void, (2 *Roll. Abr.* 81.) for uncertainty." 5 *Mod.* 137. 1 *Chitt. Crim. L.* 174. 327. 2 *Sw. Dig.* 380.

Fifthly, although it is true, that the courts have recently evinced a disposition to modify the old rules of the common law, in regard to criminal pleading, and have, in some cases, in offences created by statutes, dispensed with a technical accuracy, which seemed only fitted to defeat the ends of justice; yet the rules which govern both these classes of cases, are, at the present time, so nearly identical, that the latest elementary writers have treated of them together, under the head of indictment. 2 *Sw. Dig.* 373. *Archb. C. P. & E.* 1 *Chitt. Crim. L.* 298. 171. It is a mistake to suppose, that their only difference consists in requiring the greatest minuteness and nicety in the one case, and exacting only general and indefinite allegations in the other.

Sixthly, the rules of the common law in relation to pleadings, have been adopted here as our law, and can now be changed only by legislative enactments; but no statute has yet been passed, to change or modify them.

2. That the information is also insufficient, because the accused is charged disjunctively with the intention of selling

"wine *or* spiritous liquors," to be drank on his premises. This is not sufficiently certain. And here much of the reasoning and most of the authorities, in regard to the first exception, are eqally applicable.

*New Haven,*
June, 1847.

Barth
*v.*
The State.

In the first place, the word *wine* and the words *spiritous liquors,* do not mean, and were not intended to express, the same thing. The latter phrase stands for a *genus* or class, of which wine is only a species. The signification of these terms being different, the information is bad ; for they are a part of the definition of the offence, and are stated in the alternative. 1 *Chitt. Crim. L.* 174.

Secondly, the allegation in question is not made good, because the expression occurs in the statute creating the offence, and is borrowed from it. There was good sense in not requiring the pleader, in *The United States* v. *Gooding*, 12 *Wheat.* 460. to specify the particulars of the fitting out of a vessel designed for the slave-trade, because it would have led to unreasonable prolixity. The decision in that is analogous to the rule of the common law in similar cases. See *Kilbourn* v. *The State,* 9 *Conn. R.* 560. *Whiting* v. *The State,* 14 *Conn. R.* 487. *The Commonwealth* v. *Odlin,* 13 *Pick.* 492. None of these cases countenance alternative pleading ; and the *dictum,* that in indictments for offences created by statute, it is sufficient to charge the offence in the words of the statute, is qualified, by calling it the *general* rule. In *Whiting* v. *The State,* 14 *Conn. R.* 491. it is stated " there are some exceptions ;" and in *The United States* v. *Gooding*, 12 *Wheat.* 474. *Story,* J. says, " there are doubtless cases where more particularity is required, either from the obvious intention of the legislature, or from the application of *known principles of law ;*" and in *The United States* v. *Mills,* 7 *Peters* 138. *Thompson,* J. says, that " in all cases, the offence must be set forth with clearness and all necessary certainty, to apprise the accused of the crime of which he stands charged." The reason of the general rule claimed, does not apply, in the present case ; and to enforce it, would be to do violence to established precedents.

3. That the judgment is erroneous, because the accused is ordered to pay a certain fine, and the costs of prosecution, to the treasury of *New-Haven* county ; whereas the statute expressly directs the fine to be paid to the treasury of the

*New-Haven,*
*June, 1847.*

Barth
*v.*
The State.

town where the offence was committed. *Stat.* of 1846. *p.* 46. The judgment is indivisible, and if bad in part, it is wholly bad; otherwise the party would be remediless, there being no corrective or discretionary power lodged with executive officers.

*Kimberly,* for the defendants in error, contended, 1. That the information was sufficient, in both the respects in which it was excepted to. If the averment as to the place kept, is to be considered as in the alternative, still it charges a violation of the law; for the statute prohibits the keeping of " any house, store, shop *or* other place," for the purpose specified. But there is no alternative averment in the case; *store* and *shop* being used to designate one and the same place. In popular use, especially with reference to this subject, these terms are synonymous. To say that a man keeps a *store* for the purpose of selling liquors, is the same thing as to say that he keeps a *shop* for that purpose. These are not technical terms; and the court will understand them as they are commonly understood. The allegation, in the common sense view of it, is, that the accused kept a certain place, called a *store* or *shop.*

The other objection relates, not to the thing prohibited by the statute, but to the purpose for which that thing was done. Now, admitting that this purpose is an essential ingredient of the offence, and that it is here stated in the alternative, yet if both branches of the alternative are within the statute, (as they manifestly are,) why is not a complete offence alleged? And if so, why is the form of the allegation objectionable? It is in the words of the statute, which is generally sufficient. Under this head, the following cases were referred to. *Stevens* v. *The Commonwealth,* 6 *Metc.* 241. *Whiting* v. *The State,* 14 *Conn. R.* 487. 491. *The State* v. *Price,* 6 *Halst.* 203. *Commonwealth* v. *Odlin,* 23 *Pick.* 375. 2 *Sw. Dig.* 705.— " store or shop" *p.* 748.—"spiritous liquors or ardent spirits." *Rex* v. *Middlehurst,* 1 *Burr.* 399. *Cowp.* 682. where Lord *Mansfield* lays down the correct doctrine. *Bald.* 116.

2. That the judgment will not be reversed for the mistake as to the disposition of the fine. In the first place, this is no part of the sentence. The statute (*sect.* 4.) directs how the fine shall be disposed of; but it imposes no duty on the

court in relation to this subject. The judgment is complete, without any such order. Secondly, this matter does not affect the plaintiff in error. He is not injured, by the unauthorized order of the court.

STORRS, J. The statute, for a violation of which the plaintiff in error was convicted, prohibits any person or persons, except taverners, from keeping " any house, store, shop, or other place for the purpose of selling any wine or spiritous liquor, to be drank thereat." *Stat.* of 1846. *p.* 46. The information charged, that he, "on &c., at &c., not being a taverner, kept a certain store or shop, situate in *Church* street, in *New-Haven,* for the purpose of selling wines or spiritous liquors to be drank thereat."

The first question which arises on the assignment of errors, respects the sufficiency of this information, which, the plaintiff in error claims, is defective for want of certainty ; first, in the description of the place alleged to have been kept by him, for the purpose therein mentioned ; and, secondly, in the description of the liquors for the purpose of selling which it was kept.

He insists, that it is not sufficient to allege in the alternative, with respect to the first, that he kept either a store or shop ; and with respect to the second, that it was kept for the sale of either wines or spiritous liquors ; but it should be stated, as to the one, whether he kept a store or a shop, and as to the other, for the sale of which of those kinds of liquors it was so kept. Perhaps, as to the latter, the allegation is not unfairly susceptible of the construction that he kept the place for the sale of each of those two kinds of liquors, whichever of them should be applied for, and is thus equivalent to an allegation that he kept it for the sale of both. If that were its true meaning, we have no doubt it would be sufficient. *The Commonwealth* v. *Bolkom,* 3 *Pick.* 281. *Rex* v. *Middlehurst,* 1 *Burr.* 399. But we prefer to consider it on the construction claimed for it, by the plaintiff in error, which makes it an alternative averment that he kept the place for the sale of only one, or the other, of them. The keeping of either of the places mentioned, for the purpose of selling of those kinds of liquors, is a breach of the statute on which the information is founded ; so that the plaintiff in error was charg-

*New-Haven,*
*June, 1847.*

Barth
*v.*
The State.

ed with and convicted of acts clearly constituting a violation of it. The objection, therefore, to the information, is not, that the offence is so imperfectly described, that it does not certainly appear, that the statute has been violated. Most of the cases cited in support of the exception here taken, turn upon an objection of that character; and the courts, notwithstanding their relaxation of several of the ancient rules applicable to the framing of indictments, continue to be strict in requiring that the acts done by the accused shall be so stated, that it shall appear with certainty, that the offence intended to be charged was committed. *The King* v. *Mason,* 2 *Term R.* 581. *Rex* v. *Catherall,* 2 *Stra.* 900. *Rex* v. *Munoz, Id.* 1127. *The King* v. *Harpur,* 5 *Mod.* 96. *Lake's* case, 3 *Leon.* 268. *Lee* v. *Clarke,* 2 *East* 333. *The King* v. *Jukes* & al. 8 *Term R.* 536. 1 *Hale's P. C.* 220. 1 *Leach* 123. 556. 1 *Moody's* C. C. 160. 247. 239. 2 *Moody's C. C.* 15. 2 *East's P. C.* 617. *Rex* v. *Douglass,* 1 *Campb.* 212. *Rex* v. *Compton,* 7 *Car. & Pa.* 139. (32 *E. C. L.* 469.) 1 *Rus. & Ry.* 258. Nor is this a case where the information may apply to two different definite offences, or offences of a distinct kind, as in *Rex* v. *Marshall,* 1 *Mood. C. C.* 158. Nor is it claimed, that this information is obnoxious to the objection of duplicity in charging more than one violation of the law; and it is obvious, that the doing of only one single act is alleged. But the precise objection is, that the offence is so charged in the alternative, that it is uncertain in what manner it was committed, whether by keeping a store or a shop, and whether by keeping it for the sale of wines or of spiritous liquors. If indeed the true construction of the information is, that it charges the offence in the alternative, of keeping either one or another described place for the purpose mentioned, it would certainly be difficult to sustain it, by the precedents and adjudged cases, especially those of an ancient date. But the nicety and strictness in framing indictments, which was formerly required, has been, in modern times, considered as excessive; and therefore, has been much relaxed. As to one class of cases, where it was held insufficient to allege alternatively, that the defendant did an act, or caused it to be done, Lord *Mansfield* said, in *Rex* v. *Middlehurst,* (1 *Burr.* 399.) that he could not see the reason of it; and in that case, the court, laying stress on the fact that these

decisions were on indictments, where the cases were very nice, refused to apply that rule to an order of two justices, and an order of sessions confirming it, made in pursuance of an act of parliament, (for the more effectual securing the payment of rents and preventing frauds by tenants,) against one *T. M.*, for wilfully and knowingly aiding and assisting in fraudulently removing and conveying away 5 cows &c. or in concealing the same ; although the act created two offences. *viz.* assisting in *removing*, and assisting in *concealing* the goods. And it is now held, that less strictness and particularity is required in indictments and informations for mere statutory offences, than for offences at common law ; and especially, for statutory offences which amount only to misdemeanours, where less strictness is tolerated than for felonies. *Whiting* v. *The State,* 14 *Conn. R.* 487.

But we do not deem it necessary to determine whether this information would be good, if the offence were charged alternatively, as the plaintiff in error claims. Considering the mode of using the words *store* and *shop* in this country, and the meaning usually attached to them, especially when they are applied to a place where goods are bought and sold, in which sense they are obviously used in the act on which this information is founded, we think that they are to be considered, in that statute, and also in this information, which is in the very words of it, as synonymous terms ; and that therefore, although the words are connected, by the disjunctive particle, and the allegation as to the place kept is in an alternative form, it is not in substance and sense an allegation that the accused kept one or another of two different places, but that he kept one place, called by the name of a store or shop. And, as these words are, in connexion with the business of selling, to which they are here applied, commonly used indiscriminately and synonymously, in this country, it is much more proper to consider them as used in the same sense in this information, and also accords more with the meaning of the allegation as indicated by its frame, than to consider it as importing that the accused had two distinct buildings, one of which was kept by him for the purpose there mentioned. By a reference to the lexicographers of this country and *England,* it appears, that the word *shop* is used in the same sense in both ; but that the word *store,* as applicable to a building, is

used in a more extensive sense, in this country than in that. There, it is never applied to a place where goods are sold, but only to one where they are merely deposited : here, it is used to denote both of these. Indeed, it is so true that the two words are here in common parlance synonymous, as to have been a matter of remark by *English* travellers : and where words, which have no technical signification, are used in law proceedings or other instruments, they should be interpreted by courts in the sense in which they are commonly understood in the country where they are used. We would not say, that the terms *store* and *shop* may, under all circumstances, be used indiscriminately for each other, where they are connected with nothing which shows the particular meaning intended to be attached to them ; but we are clearly of opinion, that the fact that the place kept by the accused was one in which liquors were designed to be sold, entitles it to either of these appellations. A store kept for the sale of goods, is, to all intents, a shop, the very definition of which is, " a place where any thing is sold." *Johnson, in verb.* Although, therefore, the charge, as to the place kept, is stated in the alternative, yet as it follows the descriptive words of the statute, and those words, as there used, are synonymous, the information is not, in this respect, defective for uncertainty. *State* v. *Ellis*, 4 *Missouri R.* 474.

As to the other objection to the information, that the purpose for which the shop was kept, is not stated with sufficient certainty, because it is alleged to be kept for the sale of " wines or spiritous liquors," without designating which of them ;—it is certainly very questionable whether, if it were an information for the sale of liquors, such an allegation, in view of the authorities, would be sufficiently particular ; although in that case, if the sale were stated to be of wines *and* spiritous liquors, it would, as has been already said, be held good. *The Commonwealth* v. *Bolkom*, 3 *Pick.* 281. In that case, it would be sufficient to prove, and therefore it would be necessary for the defendant to be prepared to disprove, the sale of either :—and he would be subjected to greater inconvenience where the statement is in the alternative. The authorities, however, would, perhaps, be too inveterate, in that case, to be disregarded. We are not disposed to apply the rigour and niceness of the ancient rules on this subject any farther

than the adjudged cases expressly require; and we think,
that they do not go so far as to make it necessary for us to sustain this objection to the information. The offence here
consists, not in the selling of any particular kind of liquors; and it is immaterial whether any sale has been made; but in the keeping of a place for the purpose of such sale. The keeping of the place, is the act which constitutes the offence : the purpose for which it is kept, is only a circumstance attending it, which is necessary in order to make it criminal. This purpose or intention is not the thing prohibited, although, connected with the main act of keeping the place, it makes such act punishable. It is a necessary ingredient in the offence, and therefore must be alleged, because the act of keeping such place, independent of that particular design, would be innocent. *Rex* v. *Phillips*, 6 *East's R.* 454. But when the purpose necessary to make the act criminal, consists of selling either one of several things of the same general character, the sale of each of which tends to produce the self same evil, and that which it was the object of the statute to prevent; where the purpose of selling either of them, does not vary definitely the nature of the offence or its punishment; it would be not only an overstrained niceness, but going farther than any adjudged case which has been cited, to hold the information bad, for alleging that purpose, with respect to the sale of those things, in the alternative; especially when, if it were stated conjunctively, that the purpose was to sell both, it would be a good information, and sufficient to prove under it a purpose to sell either; although it would, in the latter case, be virtually as uncertain as in the other, what charge as to said purpose the defendant was required to meet, since he must come prepared to answer the proof as to both purposes.

Further; the allegation here excepted to, is descriptive of the manner in which the offence was committed, rather than the act constituting the offence, and is therefore within the principle of *Stevens* v. *Commonwealth*, 6 *Metc.* 241. where it was held, that stating the commission of the offence in different modes, is not objectionable. The allegation here, moreover, is in the words of the statute, which, as a general, although not universal rule, is sufficient, and does not fall within any of its exceptions. This objection, therefore, should not prevail.

*New-Haven,*
*June, 1847.*

Barth
*v.*
The State.

The last error assigned, relates to the form of the judgment rendered by the county court. The objection is, that it directs the defendant below to pay the fine imposed to the treasury of the county of *New-Haven,* whereas it should have been directed to be paid to the treasury of the town of *New-Haven.* As the record shows, that the conviction was on the presentment of a grand-juror of that town, there is no doubt that, by the provisions of the fourth section of the act on which it was founded, the fine imposed belonged to its treasury. *Stat. of* 1846. *p.* 46. But neither does that act, nor the general statute in relation to the disposition of fines, forfeitures and penalties, prescribe the form of the judgment where they are imposed, or provide that the court shall direct as to the disposition of them. Nor does any general principle of law require such direction. The state, county or town, into whose treasury it is provided they shall be paid, become entitled to them, not by the judgment of the court awarding them, but by virtue of the provisions of the statute alone. The court has properly no controul over the disposition of fines; and although it has been customary for the courts, in their judgments on criminal convictions, to add a direction that the defendant shall pay the fine into the particular treasury where by law it belongs, we have no doubt that such direction is unnecessary; and that a judgment merely awarding that he shall pay it, without designating into what treasury, would be complete and valid. The ultimate disposition of the fine, is a matter which cannot affect the defendant, and with which he has nothing to do, since it cannot be placed in the treasury where it belongs, until it is paid into the hands of the officer whose duty it is to receive it, in the first instance. This objection, therefore, if the construction of the judgment in question be the one claimed by the plaintiff in error, is of a purely technical character. Still, as in that case it might with great force be urged, that the judgment is entire and indivisible, and such as is not warranted by law, it would be difficult to sustain it. But we think, that no such difficulty is presented, in the present case. The judgment here is in a peculiar form : it does not, in terms, like the ordinary judgments in criminal cases where fines are imposed, award that the defendant shall pay the fine to the treasury of the county ; but it is, that he " pay a fine of thirty dollars, which is to be paid

to the treasury of *New-Haven* county." It is indeed suscept-
ible of the construction that it shall be paid to said treasury,
by the defendant against whom it is awarded ; but that is not,
by any means, its necessary meaning ; and it admits also of the
construction that the fine is to be paid to said treasury, after it
shall have been paid by the defendant. And on a mere tech-
nical point like this, where the language used is of doubtful con-
struction, we are not disposed to adopt one which shall be
against law, rather than in accordance with it, especially when
the effect of the former would be to allow an offender to
escape punishment, after a fair trial on the merits of his case.
We therefore consider the latter clause of the judgment as not
being applicable to the defendant below. In that view of it,
the judgment is divisible, and the latter part of it may be
rejected as void, leaving the remainder to stand in full force.

The result is, that the superior court should be advised,
that there is no error in the judgment complained of.

In this opinion the other Judges concurred.

Judgment to be affirmed.